UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, LOS PADRES FORESTWATCH, SIERRA CLUB, DEFENDERS OF WILDLIFE and CALIFORNIA NATIVE PLANT SOCIETY,<br><br>Plaintiff(s),<br><br>vs.<br><br>U.S. FISH AND WILDLIFE SERVICE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, NATIONAL MARINE FISHERIES SERVICE and U.S. FOREST SERVICE,<br><br>Defendant(s). | No. C 08-01278 MHP<br><br>**ORDER RE INJUNCTIVE RELIEF AND FOR FURTHER INFORMATION** |

This court issued an order granting plaintiffs' motion for summary judgment and denying defendants' cross-motion for summary judgment. The court also instructed the parties to submit briefing on the form of relief. Those submissions were timely filed, but differed significantly in their recommendations. Unfortunately they have languished for sometime, not through the fault of any party, but of the court. Having reviewed the submissions, and in light of the earlier filings and reviewing the record in its entirety, the court enters the following order re injunctive relief.

In its order this court found that defendants United States Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") did not act in accordance with 5 U.S.C. section 706(2)(A) when they failed to issue Incidental Take Statements ("ITS") with their 2005 Biological Opinions ("BiOps") related to four southern California forest plans. Plaintiffs

argue that the court should vacate the biological opinions and essentially require that the FWS and NMFS start over.  Defendants contend that the opinions should not be vacated, but that the matter be remanded to the respective agencies for further consideration of the court's decision without vacatur or interim relief.

In determining the appropriate relief the court looks to the operative statute and regulations, in particular sections 4(d), 7(b)(4), 7(o) and 9 of the Endangered Species Act of 1973 ("ESA"), 16 U.S.A. § 153, 1536(b)(4) and 1538, and 50 C.F.R. sections 17.3 and 402.14(i).  The court is also aware that as a result of its delay project-specific or site-specific actions may have been taken that already have implications for this order.  Thus, Part A of this order requests certain further information with respect to activities that have occurred or are occurring in the interim.  Part B lays out the relief supported by the court's findings and the record in this action and instructs defendants that they shall proceed to comply with Part B..

It does not appear necessary that the BiOps be vacated in their entirety.  However, as a result of this order some portions may be effectively vacated or will require amendment.  Therefore, the newly issued BiOps shall be amended as necessary in order to comply with this order and each shall be entitled "Amended 2005 Biological Opinion".  Defendants shall reply to the questions posed in Part A of this order **within sixty (60) days of the date of this order**.  They shall issue amended BiOps including the required ITS **within six (6) months of this order**.

I. PART A

1. What project-specific or site-specific actions have been contracted for, initiated, are in progress, have been or are being implemented or completed under the United States Forest Service's ("FS") 2005 revised plans for the Angeles, Cleveland, Los Padres or San Bernardino Forests ("The Forests") since the time this action was filed until the date of your response to this Order?

2. What project-specific or site-specific actions are planned, anticipated or likely to occur under the 2005 revised plans for The Forests and within what time frame, e.g., within the next one-year, two-year, five-year, ten-year periods?

3.  What revisions, if any, have been made to the plans or BiOps at issue, including dates, nature of revisions and reasons for them?

4.  Have any other programmatic or other plans been drafted or issued with respect to The Forests or any of them since the 2005 plan?

5.  Have any other BiOps with respect to The Forests or any of them been drafted or issued since the 2005 BiOps?

6.  What other programmatic or project/site specific environmental analyses have been performed with respect to The Forests or any of them since the date of the 2005 revised plan and not included in any of your answers to the above?

7.  What section 7 consultations have occurred with respect to The Forests or any of them since the date of the 2005 revised plan and are not included in your answers to the above?

8.  What actions, if any, have been taken without project or site-specific analysis with respect to The Forests or any of them since the date of the 2005 revised plan and not included in your answers to the above?

9.  What land use data and impact minimization measures have been developed or utilized with respect to The Forests or any of them since the date of the 2005 revised plan and not included in your answers to the above?

10.  What take or harms to listed species have occurred with respect to The Forests or any of them since the date of the 2005 revised plan?

11.  What modifications, degradations or destruction to habitat of listed species have occurred with respect to The Forests or any of them since the date of the 2005 revised plan?

II. PART B

Defendants FWS and NMFS shall prepare and submit Incidental Take Statements consistent with their respective agencies' mandates and guidelines and in accordance with sections 7(b)(4), 7(o) and section 9 of the ESA and the pertinent regulations pursuant to section 4(d) of the ESA,

including, but not limited to, 50 C.F.R. sections 17.3 and 402.14(i).

The ITS's shall address the following:

1. Actions for which incidental take is anticipated or exempted including, but not limited to use, operation and maintenance of existing facilities, sites, firebreaks, maintenance and collection of forest products.

2. Effect of ongoing activities on lands of The Forests that may result in loss or degradation of habitat, loss or reduction of species, and impact on restoration or renewal of species and proposed preventive and restorative measures to be taken.

3. Estimate of numbers of individual species likely to be taken including threshold or other numbers that will initiate further consultation and evaluation and what action will be taken at that time.

4. Setting of annual incidental take thresholds of each listed species

5. The reasonable and prudent measures that will be necessary and appropriate to minimize incidental take of listed species.

6. The terms and conditions with which contractors, permittees and others performing work on, using or issued permits to use The Forests' lands must comply in protecting habitat and minimizing incidental take and the measures to be taken to enforce same.

7. Set forth programs for:

    a) monitoring impact of incidental take

    b) regular reporting of incidental take, the progress being made to minimize incidental take and the actions to be taken in furtherance of same

    c) recognizing the continuing duty to regulate incidental take and enforce such regulations

    d) continuing to perform site-specific analysis to adequately assess the effects of anticipated actions, activities, work, maintenance, etc. on habitat and listed species including, but not limited to grazing allotments, recreational activities including recreational vehicles, use of facilities by permittees and others having access to The

Forests as these activities affect habitats including key habitats for listed or proposed species.

8. Describe the handling of changes in, modifications to or transfer of habitat of listed species.

9. Identify and describe new projects that may involve construction, land use, resource management, such as new roads, trails, bridges, recreation sites, prescribed burns, timber harvesting, sales or salvage that may affect listed species and their habitat.

10. Identify and describe actions related to emergency responses or situations.

11. Such other matters as are required under the pertinent statutes and regulations noted above.

In addition, the Forest Service shall put in place plans for addressing each project or site-specific action in advance of implementing the project or action that takes into account: a) assessments of habitats and species that may be implicated; b) prioritize habitat assessments and species evaluations in accordance with best science, conservation and protective practices.

The Forest Service shall develop implementation and effectiveness monitoring plans **within six (6) months of this order** and begin implementation **within sixty (60) days thereafter**.

**In the Interim and until further order of the court**:

1) Defendants shall take all necessary measures to limit habitat degradation and minimize incidental take by reason of road, trail, waterway, recreational usage including use of recreational vehicles, maintenance and construction work including work by contractors and others with respect to The Forest lands.

2) The annual incidental take threshold contained in the 2001 BiOps for The Forests and the notice provisions contained therein shall apply.

3) Defendants shall determine as accurately as possible the population numbers of steelhead trout in the Los Padres and Cleveland National Forests and develop a monitoring, tracking and

5

reporting program to assess the on-going impact to the remaining steelhead trout population.

4) Defendants shall report on the state of suction dredge mining in the San Gabriel River and determine the effect it has had on the Santa Ana Sucker, accounting for the approximate number of Santa Ana Suckers currently extant and explain **within sixty (60) days of the date of this order** why such mining should not be immediately halted.

5) Defendants shall halt all construction and close access to the Williamson Rock Area of the Angeles National Forest until the Amended Biological Opinion and accompanying ITS is filed and the matter is reviewed by the parties and the court.

6) Maintain closure of Little Rock Creek Road of the Angeles National Forest and any construction on or usage of it until the Amended Biological Opinion and accompanying ITS is filed and the matter is reviewed by the parties and the court.

7) Close the Cherry Canyon area of Los Padres National Forest to recreational shooting until the Amended Biological Opinion and accompanying ITS is filed and the matter is reviewed by the parties and the court.

8) Insure that all necessary protection of habitat and listed species is exercised when engaging in fire suppression activities such that neither habitat nor species is adversely affected.

FWS and NMFS shall amend their 2005 BiOps in accordance with this order and as required by their accompanying ITS's within the times set forth above.

IT IS SO ORDERED.

Date: June 27, 2011

_____
MARILYN HALL PATEL
United States District Court
Northern District of California